*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 12, 2024

*In re* GILMORE, Minors.

Nos. 366244; 366245
Wayne Circuit Court
Family Division
LC Nos. 2022-001948-NA;
             2022-001875-NA

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In docket No. 366244, respondent appeals as of right an order terminating his parental rights to the minor children ASG, JMG, and JDG, under MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). In docket No. 366245, respondent appeals as of right an order terminating his parental rights to the minor children DCG and TDG[1] under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse to sibling of the child and sexual abuse is reasonably likely to happen again), (j), (k)(*ii*) (the parent abused the child or a sibling of the child, the abuse included criminal sexual conduct involving attempted penetration, and there is reasonable likelihood that the child will be harmed if returned to the care of the parent), and (k)(*ix*) (the parent abused the child or the sibling of the child, the abuse included sexual abuse, and there is reasonable likelihood that the child will be harmed if returned to care of the parent). These appeals were consolidated.[2] We affirm.

---

[1] DCG and TDG are twins.

[2] On May 31, 2023, this Court entered an order consolidating these two appeals. *In re Gilmore Minors*, unpublished order of the Court of Appeals, entered May 31, 2023 (Docket Nos. 366244 and 366245).

# I. FACTUAL BACKGROUND

On December 8, 2022, a Child Protective Services (CPS) worker filed two permanent custody petitions on behalf of petitioner, the Michigan Department of Health and Human Services (DHHS), in the Wayne Circuit Court requesting the trial court to take jurisdiction over ASG, JDG, JMG, DCG, and TDG under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and (2) (unfit home environment due to neglect), remove the children from respondent's care, and enter an order terminating respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*). The petitions alleged respondent sexually abused GW, a half-sister to DCG and TDG, when she was younger. The petitions stated that GW was forensically interviewed and disclosed she was raped by respondent when she was approximately six years old. GW alleged respondent sexually abused her three times, each time involving penetration. The petitions were authorized.

Following a bench trial on jurisdiction and statutory grounds, the trial court found credible GW's testimony that she had been raped, and found respondent's testimony not credible. The trial court found the children came within the court's jurisdiction, and found MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*) were established to terminate respondent's parental rights to DCG and TDG. The court stated there was a reasonable likelihood that the children would be harmed if returned to the home of the parent, that respondent abused the children's sibling, and that abuse included penetration. The trial court determined MCL 712A.19b(3)(j) was established regarding ASG, JDG, and JMG because there was a reasonable likelihood that the children would be harmed if returned to the care of respondent, given his abuse of GW.

Following a best-interests hearing, the trial court concluded it was in the best interests of all five children that respondent's parental rights be terminated because he sexually abused GW. The court stated the seriousness of his actions, with a child who viewed him as her stepfather, placed each of the five children at risk of serious harm if they were returned to respondent's care. The court acknowledged the strong bond between respondent and the children, and noted that they were placed with relatives, but still determined the sexual abuse perpetrated by respondent outweighed those factors. The trial court also found respondent's personality concerning because the record showed he was insensitive and controlling, used poor judgment, was frequently late to visitation, was argumentative, and was unwilling to share information. Respondent filed claims of appeal on April 18, 2023, which were consolidated by this Court on May 31, 2023. *In re Gilmore Minors*, unpublished order of the Court of Appeals, entered May 31, 2023 (Docket Nos. 366244 and 366245).

On appeal, respondent argues that the trial court clearly erred in terminating his parental rights because petitioner did not make reasonable efforts to reunify respondent with his children. Respondent also argues that the statutory grounds for termination were not established by sufficient evidence, and that it was not in his children's best interests for his rights to be terminated. We conclude that none of these arguments have merit.

# II. REASONABLE EFFORTS

Respondent first argues that DHHS did not make reasonable efforts to reunify him with his children because it failed to provide him with a service plan. We disagree.

Reunification services need not be provided when termination of parental rights is the agency's goal. *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). MCL 722.638(2) mandates that petitioner seek termination of parental rights when a parent is suspected of perpetuating sexual abuse upon the minor child or the minor child's siblings. In its permanent custody petition, DHHS sought termination at the initial disposition under MCL 722.638 because it believed that respondent had sexually abused GW. See MCL 712A.19b(4); MCR 3.961(B)(6). Therefore, DHHS was not required to provide respondent with any reunification services, including a service plan.

Moreover, when aggravating circumstances exist, the DHHS is not required to make reasonable efforts to reunify a child with the family before seeking termination. See MCL 712A.19a(2); see also *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (citations omitted). And a judicial determination that the parent has subjected the child to criminal sexual conduct involving penetration is an aggravated circumstance as provided in MCL 722.638. See MCL 712A.19a(2)(a). Here, the trial court determined that respondent sexually abused GW through penetration by raping her three times. See MCR 3.977(E). Therefore, the trial court found aggravated circumstances existed. Accordingly, DHHS was not required to provide respondent with any reunification services, including a service plan, and this issue is without merit.

## III. STATUTORY GROUNDS

Respondent next argues there was insufficient evidence to support the trial court's findings that MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*) were established because the allegations of sexual abuse against him are false. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews a trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### A. MCL 712A.19b(3)(b)(*i*)

MCL 712A.19b(3)(b)(*i*) provides for termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

Respondent argues there was insufficient evidence to support both the trial court's determination that he sexually abused GW and its determination that there was a reasonable likelihood DCG and TDG would suffer from abuse in the foreseeable future if placed in his home.

GW testified that respondent sexually abused her when he penetrated her vagina with his penis on three separate occasions when she was younger. GW stated that, the first time she was raped, respondent told her to stand on a chair while he pulled down both his pants and her pants before penetrating her while she played a game on his phone. The second and third time GW was raped occurred on a couch in another family member's home. GW remembered respondent being surprised that it did not hurt her and she told her mother that she did not want to go back to that house. GW testified that she told her aunt and uncle what had happened about seven years later, when she was 13 years old, because she had learned what respondent did was wrong. The trial court found GW's testimony credible and found respondent's testimony not credible. It is undisputed that GW is the half-sister of both DCG and TDG. The court found it was reasonably likely that DCG and TDG would suffer from abuse in the foreseeable future if allowed to remain in respondent's care because the abuse occurred while GW was only six years old and had a bond with respondent. This was a proper and reasonable conclusion because it is reasonably likely respondent will commit sexual abuse again upon his young children. Therefore, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*).

### B. MCL 712A.19b(3)(j)

A trial court may terminate parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Termination is proper pursuant to MCL 712A.19b(3)(j) if there is a potential of physical or emotional harm to the children. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Respondent argues there was insufficient evidence to support the trial court's finding that his five children, ASG, JDG, JMG, DCG, and TDG, would be harmed if they were returned to his home. However, the trial court heard testimony from GW about how respondent raped her three times when she was around six years old. GW told the court how respondent pulled her pants down and penetrated her, and then told her not to tell anyone. Respondent accused GW of making the allegations up, pinning the blame on GW's family because he believed they wanted to take custody of the twins. Putting the children back in a home with respondent, knowing he sexually abused a young girl, would create a reasonable likelihood that the children would be harmed because of his predatory behavior. Therefore, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j).

### C. MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*)

MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*) provide for termination of parental rights under the following circumstances:

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

\* \* \*

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

Respondent argues that he did not sexually abuse GW and that there was insufficient evidence to support the trial court's conclusion that he did abuse her under MCL 712A.19b(3)(k)(*ii*) and (*ix*), which were the statutory grounds relied upon to terminate his parental rights to DCG and TDG.

The trial court heard testimony from GW, that it deemed credible, that respondent sexually abused her when he penetrated her vagina with his penis on three separate occasions when she was approximately six years old. GW stated that, the first time she was raped, respondent told her to stand on a chair while he pulled down both his pants and her pants before penetrating her while she played a game on his phone. The second and third time GW was raped occurred on a couch in another family member's home. GW remembered respondent being surprised that it did not hurt her and she told her mother that she did not want to go back to that house. GW told her aunt and uncle what had happened about seven years later, when she was 13 years old, because she had learned what respondent did was wrong. The trial court found GW's testimony credible and found respondent's testimony not credible. It is undisputed that GW is the half-sister of both DCG and TDG. MCL 722.622 defines "confirmed sexual abuse" as "a confirmed case that involves sexual penetration, sexual contact, attempted sexual penetration, or assault with intent to penetrate . . . " as defined by MCL 750.520a, which defines "sexual penetration" to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." GW's description of respondent's actions meets that definition of sexual abuse involving penetration. Therefore, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*).

## IV. BEST INTERESTS

Respondent argues the trial court clearly erred when it found it was in the best interests of ASG, JDG, JMG, DCG, and TDG to terminate his parental rights because other factors, such as their bond with respondent and relative placement, should outweigh the allegations of sexual abuse. We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe

the witnesses." *In re BZ*, 264 Mich App at 296-297.  In making its determination, the trial court should weigh all of the evidence available to it and may consider the following:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan.  [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022), quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider."  *In re Gonzales/Martinez*, 310 Mich App at 434.  While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]"  *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

Respondent argues that he has a strong bond with all five of his children, that the children being placed with relatives weighs against termination, that the lawyer-guardian ad litem and clinical evaluator agreed his rights should not be terminated, and it would not be in the children's best interests to grow up without their father.  Petitioner argues that respondent's sexual abuse of GW, who also had a bond with him, outweighs the other factors.  Petitioner also notes that the clinician changed her mind and stated that she would recommend termination upon learning the court had already made a factual determination that the sexual abuse had occurred.  DCG and TDG were living with their paternal grandmother, who was ready to adopt them, and were doing well.  ASG, JDG, JMG were living with their biological mother.

In its best-interests analysis, the trial court carefully considered all of the evidence, which included the fact that the children would all be staying with family members and had a bond with their father.  Despite these factors, which do weigh against termination, the court concluded that the risk of future sexual abuse, and the children's need for permanence and stability, outweighed the evidence against termination.  Respondent raped GW, who was six years old and had a bond with respondent as a father-like figure.  GW also expressed concern for her siblings being with respondent.  The clinical evaluation also noted that respondent showed poor judgment, which had led to multiple arrests and criminal charges, and that the clinician changed her mind to support termination once she learned the court had determined the sexual abused had occurred.  While placement with a relative is a factor, it is not dispositive.  The trial court's decision that it was in the children's best interests to terminate respondent's parental rights was sound and reasonable.

Therefore, the trial court did not clearly err when it found it was in the best interests of ASG, JDG, JMG, DCG, and TDG to terminate respondent's parental rights.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly